IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WAYNE MCNEIL, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 13-1947 |
| v. | : | |
| | : | |
| GREYHOUND LINES, INC., | : | |
| Defendant. | : | |

November 5, 2013                                                                                   Anita B. Brody, J.

### MEMORANDUM

Plaintiff Wayne McNeil brings suit against his former employer, Defendant Greyhound Lines, Inc. ("Greyhound"). McNeil alleges that Defendant Greyhound, through its managers, supervisors, agents, and employees, engaged in gender discrimination, race discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. § 951 *et seq.*[1]

Defendant Greyhound moves to dismiss McNeil's complaint in its entirety, with prejudice, under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on the basis of gender discrimination, race discrimination, or retaliation. I will grant in part and deny in part the motion for the reasons discussed below.

---

[1] Federal question jurisdiction lies over Plaintiff's Title VII claims under 28 U.S.C. § 1331, and supplemental jurisdiction lies over Plaintiff's PHRA claims under 28 U.S.C. § 1367.

1

## I. BACKGROUND[2]

Plaintiff Wayne McNeil is an African American male who wears his hair in dreadlocks in support of his race, culture, and heritage. He worked as a Greyhound bus driver from June 13, 1998, until his termination on January 3, 2013. During his tenure, McNeil was an exemplary employee, respected for his service to Greyhound.

Beginning in 2007, McNeil was repeatedly reprimanded and suspended for his hairstyle because his dreadlocks violated Greyhound's grooming policy. Greyhound's grooming policy states: "Hair must be kept neat be styled and colored in a matter that does not draw undo attention to the employee. Hair length for men should not be extended below the collar." Compl. ¶ 38. Female Greyhound employees are allowed to wear hair of any length. In March 2011, McNeil was suspended for three days without pay because of his hairstyle. On November 6, 2011, he was suspended for two days because of his hairstyle. McNeil told Greyhound that he wears his hair in dreadlocks in honor of his race, culture, and heritage and that removing his dreadlocks would go against his strongly held philosophical beliefs.

When McNeil contacted his direct supervisors about his treatment, they explained that they were following the directions of Vice President of the Region Michael Fleischhauer, a Caucasian male. Fleischhauer told McNeil that he personally disliked McNeil's hairstyle and that dreadlocks were not suitable for the work environment in any circumstance. Fleischhauer also commented to Al King, a manager at Greyhound, that "you know he [Plaintiff] is a troublemaker." Compl. ¶ 57.

According to McNeil, Greyhound applies its grooming policy only to those employees with ethnically African American male hairstyles. On several occasions, McNeil identified to

---

[2] All facts are taken from the complaint.

his supervisors similarly situated male employees whose hair also extended below their collars. Caucasian men with hair below their collars were not reprimanded or suspended.

McNeil filed several grievances with his union describing his treatment and alleging discrimination; these grievances were denied. On November 14, 2011, McNeil filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). On December 17, 2012, McNeil submitted to the EEOC a Request for Notice of Right to Sue letter.

On January 3, 2013, Greyhound terminated McNeil. According to the Notice of Termination attached to the Complaint,[3] on December 22, 2012, McNeil was assigned to drive an empty bus to Sugarloaf, Pennsylvania to a stranded Greyhound driver and passengers. A confrontation ensued between McNeil and the other driver. McNeil drove off, leaving behind the driver and one passenger. According to the Notice, McNeil's conduct violated Greyhound's personal courtesy/conduct policy, and this incident and McNeil's "previous record" led Greyhound to terminate McNeil. On January 11, 2013, McNeil received from the EEOC a Notice of Right to Sue letter.

**II. LEGAL STANDARD**

In deciding a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted).

---

[3] For the purposes of a motion to dismiss, a court may "consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994).

3

To survive dismissal, a complaint must allege facts sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. DISCUSSION

### A. The Law of Title VII and PHRA Disparate Impact Discrimination[4]

Discrimination claims based on disparate impact "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977). "The disparate impact theory of liability is available only to challenge facially-neutral employment practices." *Guster v. Hamilton Cnty. Dep't of Educ.*, 1:02-CV-145, 2004 WL 1854181, at *29 (E.D. Tenn. Mar. 2, 2004) (citing *Equal Employment Opportunity Comm'n v. Joe's Stone Crab, Inc.,* 220 F.3d 1263, 1278 (11th Cir. 2000)) (finding that the practice of assigning principals to schools on the basis of race is not facially neutral and thus fails to fall into the realm of disparate impact discrimination). Thus, as a threshold matter, a plaintiff making a disparate impact claim must establish that the challenged employment practice or policy does not distinguish on its face between different groups.

---

[4] Generally, the PHRA is applied in accordance with Title VII. *Dici v. Commonwealth of Pennsylvania,* 91 F.3d 542, 552 (3d Cir. 1996).

After identifying "the specific employment practice that is challenged," *Watson v. Ft. Worth Bank & Trust,* 487 U.S. 977, 994 (1988), the plaintiff must show that the employment practice "causes a disparate impact on the basis of race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(k)(1)(A)(i). To show causation, the plaintiff must present "statistical evidence of a kind and degree sufficient to show that the practice in question has caused exclusion of applicants for jobs or promotions because of their membership in a protected group." *Watson,* 487 U.S. at 994; *see also Equal Employment Opportunity Comm'n v. Greyhound Lines,* 635 F.2d 188, 193 (3d Cir. 1980).

In *Greyhound Lines*, the Third Circuit rejected a claim for disparate impact where the "EEOC produced no evidence that Greyhound's no-beard policy selects applicants for hire or promotion in a racial pattern significantly different from that of the pool of applicants." *Greyhound Lines*, 635 F.2d at 191 (holding that "no violation of Title VII can be grounded on the disparate impact theory without proof that the questioned policy or practice has had a disproportionate impact on the employer's workforce"). The court also required the plaintiff to "demonstrate a causal connection between the challenged policy or regulation and a racially unequal result." *Id*. at 193. The EEOC had proven only that the employee was disadvantaged because he had PFB, a skin disease aggravated by shaving, not that he was disadvantaged because he was African American. *Id*. at 194. (Without comparative statistics showing the percentage of white males who suffer from diseases or skin conditions that make shaving painful or impossible, EEOC's evidence that many black males are unable to shave because of PFB simply does not permit the inference of a disproportionate impact.").

## B. McNeil's Title VII and PHRA Disparate Impact Gender Discrimination Claims (Counts II and V)

In the instant case, McNeil fails to identify a facially gender-neutral employment practice that he seeks to challenge. To the contrary, McNeil acknowledges in his Complaint that Greyhound's grooming policy is "not gender neutral," Compl. ¶ 101, and the policy establishes different requirements for men and women. Compl. ¶¶ 38, 39. Therefore, Greyhound's grooming policy is not facially neutral with respect to gender, and he cannot plausibly state a disparate impact gender discrimination claim. Accordingly, I will dismiss with prejudice McNeil's disparate impact gender discrimination claims.

## C. McNeil's Title VII and PHRA Disparate Impact Race Discrimination Claims (Counts IV and VI)

In his Complaint, McNeil fails to allege either a "racially unequal result" in Greyhound's employment patterns or a "causal connection" between Greyhound's grooming policy and that result. The Complaint contains no allegations that Greyhound hires, promotes, or fires African American employees in substantially disproportionate numbers compared to employees from other racial groups or that Greyhound's grooming policy caused such a "racially unequal result." McNeil alleges only that the policy "prevents employees of Defendant Greyhound from wearing ethnically African-American hairstyles." Compl. ¶ 121. Accordingly, I will dismiss McNeil's disparate impact race discrimination claims without prejudice to amend his complaint.

## IV. CONCLUSION

In summary, I will grant Defendant Greyhound's motion to dismiss with respect to McNeil's Title VII and PHRA disparate impact discrimination claims with leave for McNeil to amend only his disparate impact race discrimination claims. I will deny the motion to dismiss

with respect to McNeil's Title VII and PHRA disparate treatment gender and race discrimination claims and retaliation claim without prejudice to raise the same issues at a later stage in the litigation.

                                                                             s/Anita B. Brody
                                                     _____
                                                     Anita B. Brody,         J.

Copies via ECF on: